## In re McMILLAN, RAPP & CO.

## Claim of FREEMAN.

### No. 21225.

District Court, E. D. Pennsylvania.

April 16, 1941.

Paul Freeman and Freeman, Fox & Steeble, all of Philadelphia, Pa., for claimant.

George B. Clothier, David F. Maxwell, Leon J. Obermayer, and Edmonds, Obermayer & Rebmann, all of Philadelphia, Pa., for trustee.

BARD, District Judge.

This matter comes before the court on a certificate for review of the referee's order denying a petition for reclamation of certain securities.

The petition was denied only insofar as predicated upon the contention that the provisions of section 60, sub. e, of the Chandler Act, c. 575, 52 Stat. 869, 11 U.S. C.A. § 96, sub. e, are inapplicable, and was denied without prejudice to the petitioner's right to prosecute his reclamation claim on other grounds. Is section 60, sub. e, applicable to this bankruptcy?

A receiver in equity for McMillan, Rapp & Company was named on February 5, 1940, and a voluntary petition in bankruptcy was filed on February 20, 1940.

The claim filed was for 700 shares of Missouri Kansas Pipe Line stock, a certificate for which, registered in the petitioner's name, was in the bankrupt's possession at the time of the bankruptcy petition. 500 shares were purchased on November 7, 1938, and final payment therefor was made December 18, 1939. On October 6, 1939, 200 shares were purchased and were paid for.

The bankrupt, on November 7, 1938, purchased 2,500 shares of Missouri Kansas Pipe Line Stock. On January 31, 1940, the bankrupt forwarded 700 shares of this stock for transfer to the petitioner's name. There had been no specific allocation of shares to the petitioner on the bankrupt's books prior to January 1, 1940, at which

time the bankrupt was insolvent. Though returned to the bankrupt on February 3, 1940, after transfer to the claimant's name, the shares were not delivered to the petitioner. The petitioner's requests for delivery of the stock have been fruitless.

The fundamental contention in this matter concerns the nature of the bankrupt's business. The petitioner argues that the bankrupt was not a "stockbroker". The referee and the trustee are firm in their contrary position that the word "stockbroker" includes the bankrupt's business.

As indicative of the nature of the bankrupt's business, it should be noted that it was stipulated that no officer, director, or employee was a member of any stock exchange at the date of the sales, that the firm was not then a member of any stock exchange, that the firm letterhead read "Investment Securities", that the firm had listed its name in the telephone directory under "Investments" and not under "Stockbrokers", that the firm stated in a report to the Securities and Exchange Commission that it was not a broker but was a dealer and did not sell on installment contracts.

The bankrupt acted as agent or broker as well as a dealer, though its transactions as dealer or merchant far exceeded those as broker or agent.

It cannot be refuted that the bankrupt was, at least in a restricted sense, a broker of stocks and, it would therefore seem, a stockbroker. Nor can it be questioned that its business was principally that of a dealer or merchant. It is upon this circumstance that the applicability of section 60, sub. e, of the Act must be determined.

Section 60, sub. e, which is divided into five parts, begins: "(1) Where the bankrupt is a stockbroker, the following definitions and provisions of this subdivision shall apply: * * *." Patently, the section is applicable only if the bankrupt is a stockbroker or if its activities are within the scope of the meaning of the word "stockbroker" which was intended by the Congress.

■ A broker of stocks or of any other commodity deals as an agent, one who buys or sells for the account of others. The bankrupt's business was principally, as noted, of a different nature; generally it bought and sold for its own account as a dealer or merchant. This, the petitioner contends, it did in the instant case. However, it appears that the bankrupt was engaged in both selling and stockbrokerage. To deny any semblance of stockbrokerage would be against the facts.

■ The referee has concluded, and I believe properly concluded, that the bankrupt's business undeniably resembled that of a stockbroker in many ways. "It purchased and sold securities on orders from customers, it received securities for safekeeping, for future sales, under instruction from customers, and to cover sales already made for customers, it carried margin accounts, made margin calls when necessary, took securities as collateral for margin accounts, and rehypothecated customers' securities for loans for itself." These certainly are practices of stockbrokers.

■ Words must be construed to carry out the manifest intent of the Congress and in all cases shall be construed in the sense which best harmonizes with the context and promotes to the fullest extent the desired objective. It is my belief that the manifest intent of the Congress was to establish a provision applicable to bankruptcies such as the instant one. I conclude that section 60, sub. e, is applicable to this bankrupt.

Proceeding now to an examination of section 60, sub. e, it becomes apparent that the securities were improperly ruled part of the "single and separate" fund for the bankrupt's customers. It is provided in subsection (2) of section 60, sub. e, that only those "cash customers" who are able to identify specifically their property in a prescribed manner shall be entitled to reclaim it.

"Customers" are defined in subsection (1) of section 60, sub. e, as persons who have claims on account of securities received, acquired, or held by the stockbroker from or for the account of such persons for safekeeping, or with view to sale, or to cover consummated sales, or pursuant to purchases, or as collateral security, or by way of loans of securities by such persons to the stockbroker. "Cash customers" are defined as "customers" who are entitled to immediate possession of such securities without payment of any sum to the stockbroker.

■ The claimant is a "cash customer" because he claims securities received by the stockbroker pursuant to his, the claimant's purchase, to which he is entitled without payment of any sum to the stockbroker. The stockbroker received securities

for the account of the claimant pursuant to the claimant's purchase, when it received the certificates registered in the claimant's name.

As to specific identification, subsection (4) of section 60, sub. e, provides: "No cash received by a stockbroker from or for the account of a customer for the purchase or sale of securities, and no securities or similar property received by a stockbroker from or for the account of a cash customer for sale and remittance or pursuant to purchase or as collateral security, or for safekeeping, or any substitutes therefor or the proceeds thereof, shall for the purposes of this subdivision e be deemed to be specifically identified, unless such property remained in its identical form in the stockbroker's possession until the date of bankruptcy, * * *."

The securities received by the stockbroker for the account of the claimant pursuant to purchase remained in their identical form to the date of bankruptcy. Therefore, the circumstantial prerequisites being satisfied, the claimant is entitled to reclaim the securities. The referee's order disallowing reclamation must be set aside.

So ordered.